(92 Misc. Rep. 32)

## In re EYTZINGER et al.

## In re BELMONT AVE.

(Supreme Court, Special Term, Kings County.    October 25, 1915.)

1. MUNICIPAL CORPORATIONS ⬩497—CHANGE OF STREET GRADE—DAMAGES—
   AWARD—REVIEW—SUBSTANTIAL ERROR.
   The award of the board of assessors of the city of New York to abut-
   ting property owners, caused by a change in the established grade of a
   street, under Greater New York Charter (Laws 1901, c. 466) § 951, as
   amended by Laws 1912, c. 483, will not be set aside for error in finding
   that the grade was changed as a matter of fact, under section 959 of the
   charter, authorizing judicial review of the action of the board of asses-
   sors; the finding being one of jurisdictional fact, within the legislative
   function of the government as intrusted to the board, and not a proper
   subject for judicial review, within the purview of the charter provision.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§
   1167, 1168;  Dec. Dig. ⬩497.]

2. MUNICIPAL CORPORATIONS ⬩502—CHANGE OF STREET GRADE—FINDINGS—
   SUFFICIENCY OF EVIDENCE.
   Evidence held sufficient to warrant a finding of the board of assessors
   that there had been a change of street grade under circumstances en-
   titling abutting owners to damages.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig.
   § 1174;  Dec. Dig. ⬩502.]

Application by Max Eytzinger and another for the reduction of a
street improvement assessment.  Denied.

Special proceeding instituted by the petitioners, as property owners, under
section 959 of the charter, to review an assessment levied for a local improve-
ment.  The petitioners own three lots in the borough of Brooklyn facing on
Belmont avenue, on the southwest corner of Vermont street, and two lots
facing on Vermont street immediately south of the other three.  An assess-
ment upon said lots, with others in the vicinity, was confirmed April 7, 1914,
and was for regulating, grading, curbing, and laying sidewalks on Belmont
avenue, from Pennsylvania avenue to Wyona street.  Included in the assess-
ment were two awards made by the board of assessors of the city of New
York to owners of property on Belmont avenue—one to Schombs, the owner on
the southeast corner of New Jersey avenue, of $500, and one to Eisler, the
owner on the southwest corner of New Jersey avenue, of $565, for damages
to buildings on said parcels by an alleged change of grade of Belmont avenue
involved in the improvement according to the determination of the city au-
thorities.  The awards were made on the authority of section 951 of the
charter.  The share of these awards borne by the petitioners is $21.78 for
each of their three lots on Belmont avenue and 99 cents and $1.40, respective-
ly, for the two lots on Vermont street—a total of $67.73.

As the law stood at the time of the levy of the assessment which included
the awards complained of (April 7, 1914), the Legislature had decreed that
there should be no liability on abutting owners for originally establishing a
grade, and no liability for changing a grade except under certain circumstanc-
es (Charter, § 951, as it was on the date above mentioned).  The material
part of this section, as amended by Laws of 1912, chapter 483, reads as
follows:

"Sec. 951.  All cases where a change of grade of any street or avenue has
been made prior to the taking effect of this act shall, as to the liability to
make compensation for damages caused by such change of grade, be govern-
ed by the laws in force at the time such change of grade was made.  After
the taking effect of this act there shall be no liability to abutting owners for

originally establishing a grade; nor any liability for changing a grade once established by lawful authority, except where the owner of the abutting property has built upon or otherwise improved the property in conformity with such established grade, and such grade is changed after such buildings or improvements have been made. In such cases damages occasioned by such change of grade to such buildings and improvements shall be ascertained and assessed in connection with and as a part of the expenses of grading or otherwise improving the street or avenue in conformity with the grade as changed. A grade shall be deemed established by lawful authority within the meaning of this section where it was originally adopted by the action of the public authorities, or where the street or avenue has been used by the public as of right for twenty years, and been improved by the public authority at the expense of the public or of the abutting owners. All laws inconsistent herewith are hereby repealed. * * *"

The applicants claim that this case was one of original establishment of grade and that the awards were illegal, and, if it was one of change of grade, that the awards are still illegal.

Application was made to the court, under section 959 of the charter, for an order modifying the assessments against the property of the petitioners by deducting therefrom such part thereof as represents their share in the awards of· damages made as above stated. The Special Term referred the matter to the official referee to take proof of the matters set forth in the petition and to report his opinion thereon to the court. The official referee heard the proofs of the petitioners, and the city called as a witness a member of the board of assessors, who testified to the proceedings of the board in making the assessments and awards. The referee reports that, in his opinion, there was no change of grade in Belmont avenue, between Pennsylvania avenue and Wyona street, within the meaning of section 951 of the charter, and that there was substantial error in the assessment, in that it included in part awards for damages by alleged change of grade. He recommends that the assessments upon the petitioners' property be reduced $21.78 on each of lots 23, 24, and 25, 99 cents on lot 26, and $1.40 on lot 27. On the coming in of the report, the petitioners renewed their application, under section 959, for a modification of the assessments as recommended by the referee.

Charles Coleman Miller, of New York City, for the motion.
John B. Shanahan, Asst. Corp. Counsel, of Brooklyn, opposed.

KELLY, J. [1] I think the application must be denied for the following reasons:

(1) Because the matters alleged in the petition do not constitute "substantial error," authorizing the court to interfere with the action of the board of assessors.

(2) Because the proof does not warrant a finding reversing the determination of the board of estimate and the subsequent proceedings of the local board of the New Lots district and the board of assessors that the work done involved a change of grade provided for in the Charter.

The power of the court to interfere with assessments for local improvements is derived entirely from the statute. Unlike street openings, these proceedings are not based upon a decree of the court, but are matters confided to the legislative branch of the government, authorized by the board· of estimate and carried on under their supervision. Even though the court at Special Term might differ with the city authorities in their findings, it has no right to substitute its judgment for that of the officials to whose decision such matters are relegated. Matter of Shaffer, 138 App. Div. 35, 122 N. Y. Supp. 769 (App.

Div. 2d Dept. 1910), and cases there cited. By special provision of section 959 of the charter, however, the court may inquire into the action of the board of assessors in levying an assessment for a local improvement, and in cases of "fraud or substantial error" in their proceedings may modify the assessment or reduce it as justice may require.

The question presented here is whether property owners, after these proceedings before the city authorities have been completed, after the hearings held upon notice before the board of estimate, the local district board, and the board of assessors, at which all persons interested had the right to appear, with the right to the statutory appeal to the board for revision of assessments, under section 944 of the charter—after all this is done, and the authorities have determined that a change of grade is required, necessarily finding that there is in fact an existing grade, and after the work is done the assessments levied and awards made—can attack the findings of the legislative department of the government as to the necessity for the improvement in a proceeding under section 959. I think this is the real nature of this application. The improvement was ordered and completed, and the cost incurred, solely because the duly constituted authorities found that a grade had been established under the government of the old town of New Lots, and that Belmont avenue, formerly Bay avenue, was laid out and used upon that grade prior to the annexation of the town to the old city of Brooklyn. In other words, their determination to go on with the improvement was a finding, to follow the language of section 951 of the Charter, that a grade "had been originally adopted by the action of the public authorities" (in this case the former town of New Lots), "or that the street has been used by the public as of right for twenty years and been improved by the public authority at the expense of the public or of the abutting owners."

Passing for the moment a consideration of the proof adduced before the referee, which it seems to me justified the determination of the city authorities, I am of opinion that their finding here presented is not subject to review by the courts. No suggestion is made that there was any fraud in the proceedings. That was the situation in Re Livingston, 121 N. Y. 94, 24 N. E. 290, where the assessment was vacated because of gross overcharging, amounting to, as the Court of Appeals said, at least constructive fraud, and it was for this reason that the court interfered. "Substantial error" in the proceedings means, in my opinion, cases such as Scudder v. Mayor, etc., 146 N. Y. 245, 40 N. E. 734, where the Court of Appeals held that the property owner must have recourse to this proceeding; the "error" consisting of unlawfully doing the work of improvement by day's work, without proper authority for thus doing it. The same objection was raised in Re Robbins, 82 N. Y. 131, and in Re Emigrant Bank, 75 N. Y. 388. In Re Hagemeyer, 113 App. Div. 472, 99 N. Y. Supp. 369, it was held that such a proceeding was authorized to determine whether interest was collectible on each installment of an assessment from the date of the original levy or from the date when the assessment was due.

But in none of these cases was an attack permitted upon the jurisdictional findings of the city authorities that certain physical conditions existed on the ground which rendered an improvement necessary. Before such determination can be made, the charter provides for inspections, for public hearings, for examination of the locality, the making of maps, plans, contracts, and the like, and the board of assessors must view the premises, and, after full hearing, adjust the matter of assessments and awards. If they omitted any part of the statutory procedure, if they proceeded in the work of levying the assessment upon an improper basis, I concede that section 959 affords a remedy to the property owner. But it seems to me that when these duly authorized officials, having complied with the requirements of the charter, determine that there is an established grade, and there is necessity for altering it, and when they go on and do the work, and the assessment is regularly levied and awards made, the property owner cannot come before the court alleging that there was "substantial error" because there was no established grade, and that therefore no change of grade was necessary. The work has been done, the improvement has been made, and it seems to me in the first place impracticable, and in the next place contrary to law, for the court to interfere. In re Munn, 165 N. Y. 149, 58 N. E. 881; Matter of Shaffer, supra, and cases cited.

[2] 2. Belmont avenue, formerly Bay avenue, was an old highway in the town of New Lots. It was laid out and traveled upon for many years prior to annexation, at least as early as 1863. It certainly had some grade, whether legally established or by official action of the old town. In 1885 the commissioners of the town of New Lots established a grade for Bay avenue. But the petitioners say that the street remained in its unimproved condition, until the improvement which is the subject of the assessment under consideration was made in 1913, and it is claimed that the work done in 1913 was to bring the street to the grade laid out by the town commissioners in 1885. But the evidence falls short of proving the fact that there was no established grade. The clerks and draughtsmen called from the city departments had no personal knowledge on the subject. One of the two witnesses examined for the petitioners, a lady who had resided in the locality for many years, says the old road was unimproved, no sidewalks or curbs, that pedestrians went down in the mud to their ankles; but all this might be true, and yet there might have been an established grade upon the street under section 951, cited. We have a road used and traveled upon for 50 years, with houses built along the highway; we have a resolution of the former town establishing a grade in 1885; we have the determination of the officials of the city of New York, made after hearings and examination of the property; and all this is attempted to be nullified by the testimony of one witness that there was no pavement, curb, or flagging.

I think this is entirely insufficient to warrant the court in interfering with the action of the city authorities. The danger of extending the application of section 959 in matters of this kind to prior findings of the city authorities is manifest. The amount involved here is

small, but if all public improvements in the city of New York are to be subjected to summary review under section 959 in questions not involving the manner in which the work was performed or the assessment levied, not involving any charge of fraud or misconduct on the part of the city officials, but solely questioning their determination of existing physical conditions, it is a very radical departure from the established policy of the courts. I think it would be an infringement by the courts upon the legislative prerogatives of the municipal government.

The applications are therefore denied.